IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MELODY J. DORAN,                                    )       Civil No.: 6:14-cv-01669-JE
                                                   )
               Plaintiff,                          )       OPINION & ORDER
       v.                                          )
                                                   )
CAROLYN W. COLVIN,                                 )
Acting Commissioner of Social Security,            )
                                                   )
               Defendant.                          )
_____)

Alan Stuart Graf
Attorney at Law
208 Pine St.
Floyd, VA 24091

        Attorney for Plaintiff

Billy J. Williams, U.S. Attorney
Janice E. Hébert, Asst. U.S. Attorney
1000 S.W. 3rd Avenue, Suite 600
Portland, OR 97204-2902

Courtney Garcia
Special Assistant U.S. Attorney
Social Security Administration
701 5th Avenue, Suite 2900 M/S 221A
Seattle, WA 98104-7075

        Attorneys for Defendant

OPINION & ORDER - 1

JELDERKS, Magistrate Judge:

Melody J. Doran ("Plaintiff") brings this action pursuant to 42 U.S.C. §§ 405(g) and 1381a seeking judicial review of a final decision of the Commissioner of Social Security ("the Commissioner") denying her applications Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act ("the Act"). For the reasons that follow, the Commissioner's decision is affirmed.

## Procedural Background

Plaintiff filed her applications for DIB and SSI on September 3, 2009, alleging disability beginning August 18, 2009. Tr. 45, 310, 314. Plaintiff's claim was denied initially and on reconsideration, and a hearing was held before an administrative law judge ("ALJ"), who found Plaintiff not disabled in a decision dated February 10, 2012. Tr. 169. Plaintiff appealed to the Appeals Council, which granted review of the decision. On February 7, 2013, the Appeals Council remanded the case back to an ALJ, with instructions. Tr. 174-78. A second hearing was convened on July 16, 2013, before ALJ Riley Atkins. Tr. 94-126. The ALJ issued the second decision on July 25, 2013, again finding Plaintiff not disabled. Tr. 21-36. The decision became the final decision of the Commissioner on September 16, 2014, when the Appeals Council denied Plaintiff's subsequent request for review. Tr. 1-3. Plaintiff now appeals to this Court for review of the Commissioner's final decision.

## Background

Born in August 1965, Plaintiff was 44 years old on the alleged onset date. Tr. 310, 314. Plaintiff did not graduate from high school, but earned a GED. Tr. 356. She described taking 2-3 terms at a community college. Tr. 47. Plaintiff has no past relevant work. Tr. 119. Plaintiff

alleges disability due to: diabetes; anxiety; depression; ADD [attention-deficit disorder]; PTSD [post-traumatic stress disorder]; back and hip injuries; and asthma. Tr. 131.

### Disability Analysis

The ALJ engages in a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520, 416.920. The five step sequential inquiry is summarized below, as described in Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

Step One. The Commissioner determines whether the claimant is engaged in substantial gainful activity. A claimant who is engaged in such activity is not disabled. If the claimant is not engaged in substantial gainful activity, the Commissioner proceeds to evaluate the claimant's case under Step Two. 20 C.F.R. §§ 404.1520(b), 416.920(b).

Step Two. The Commissioner determines whether the claimant has one or more severe impairments. A claimant who does not have any such impairment is not disabled. If the claimant has one or more severe impairment(s), the Commissioner proceeds to evaluate the claimant's case under Step Three. 20 C.F.R. §§ 404.1520(c), 416.920(c).

Step Three. Disability cannot be based solely on a severe impairment; therefore, the Commissioner next determines whether the claimant's impairment "meets or equals" one of the presumptively disabling impairments listed in the Social Security Administration ("SSA") regulations, 20 C.F.R. Part 404, Subpart P, Appendix 1. A claimant who has an impairment that meets a listing is disabled under the Act. If the claimant's impairment does not meet or equal an impairment listed in the listings, the Commissioner's evaluation of the claimant's case proceeds under Step Four. 20 C.F.R. §§ 404.1520(d), 416.920(d).

Step Four. The Commissioner determines whether the claimant is able to perform work he or she has done in the past. A claimant who can perform past relevant work is not disabled. If the claimant demonstrates he or she cannot do past relevant work, the Commissioner's evaluation of claimant's case proceeds under Step Five. 20 C.F.R. §§ 404.1520(f), 416.920(f).

Step Five. The Commissioner determines whether the claimant is able to do any other work. A claimant who cannot perform other work is disabled. If the Commissioner finds claimant is able to do other work, the Commissioner must show that a significant number of jobs exist in the national economy that claimant is able to do. The Commissioner may satisfy this burden through the testimony of a VE, or by reference to the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2. If the Commissioner demonstrates that a significant number of jobs exist in the national economy that the claimant is able to do, the claimant is not disabled. If the Commissioner does not meet the burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

At Steps One through Four of the sequential inquiry, the burden of proof is on the claimant. Tackett, 180 F.3d at 1098. At Step Five, the burden shifts to the Commissioner to show the claimant can perform jobs that exist in significant numbers in the national economy. Id.

### The ALJ's Decision

At the first step of the disability analysis, the ALJ found Plaintiff met the insured status requirements through December 31, 1994, and had not engaged in substantial gainful activity since February 15, 1990.

At the second step, the ALJ found plaintiff had the following severe impairments: organic mental disorder; attention-deficit hyperactivity disorder ("ADHD") by history; affective

disorder; personality disorder; and PTSD by history. Tr. 18-19. The ALJ also noted the non-severe impairments of diabetes mellitus, asthma, and obesity. Tr. 19.

At the third step, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or equaled a presumptively disabling impairment set out in the Listings, 20 C.F.R. Part 404, Subpart P, App. 1. Id.

Before proceeding to the fourth step, the ALJ assessed Plaintiff's residual functional capacity ("RFC"). He found Plaintiff retained the capacity to:

> perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant has sufficient concentration and persistence to perform simple, routine tasks. Complex tasks might be problematic with sustained employment. She should avoid concentrated exposure to environmental irritants, such as molds, gases, and fumes. She should avoid exposure to workplace hazards, such as heights and machinery with moving parts. She should avoid public contact, but can engage in routine, brief, normal interactions with coworkers and supervisors.

Tr. 20.

At the fourth step of the disability analysis, the ALJ found Plaintiff had no past relevant work. Tr. 29. At step five, the ALJ determined that, based on the testimony of the VE, there were a significant number of other jobs in the national economy which Plaintiff retained the capacity to perform. Tr. 29-30.

Accordingly, the ALJ found Plaintiff was not disabled within the meaning of the Act from the application date of February 15, 1990, through the date of the decision, July 25, 2013. Tr. 30.

## Standard of Review

A claimant is disabled if he or she is unable "to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can

be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Claimants bear the initial burden of establishing disability. Roberts v. Shalala, 66 F.3d 179, 182 (9th Cir. 1995), cert. denied, 517 U.S. 1122 (1996). The Commissioner bears the burden of developing the record, DeLorme v. Sullivan, 924 F.2d 841, 849 (9th Cir. 1991), and bears the burden of establishing that a claimant can perform "other work" at Step Five of the disability analysis process. Tackett, 180 F.3d at 1098.

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); see also Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Andrews, 53 F.3d at 1039. The court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision. Martinez v. Heckler, 807 F.2d 771, 771 (9th Cir. 1986). The Commissioner's decision must be upheld, however, even if "the evidence is susceptible to more than one rational interpretation." Andrews, 53 F.3d at 1039-40.

## Discussion

Plaintiff raises the following issues on appeal: whether the ALJ (1) failed to provide legally adequate reasons to discredit her symptom allegations; (2) failed to provide adequate reasons to discredit lay testimony; (3) improperly evaluated medical opinion evidence; and/or (4) failed to develop the record regarding alleged cognitive limitations.

I. Plaintiff's Testimony

The ALJ found Plaintiff's allegations regarding the intensity, persistence, and limiting effects of her symptoms were not fully credible. Tr. 28. The Ninth Circuit relies on a two-step

process for evaluating the credibility of a claimant's testimony about the severity and limiting effect of the stated symptoms.[1] Vasquez v. Astrue, 572 F.3d 586, 591 (9th Cir. 2009) (citing Lingenfelter v. Astrue, 503 F.3d 1028, 1035-36 (9th Cir. 2007)). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." Lingenfelter, 503 F.3d at 1036 (citation and quotation marks omitted). Second, absent evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996). However, a negative credibility finding made solely because the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence" is legally insufficient. Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006).

Plaintiff made several allegations as to the severity and duration of her symptom over the course of both ALJ hearings.[2] She endorses difficulties with memory, completing tasks, concentration, understanding, following directions, and getting along with others. Tr. 52, 410. She also describes some limitations due to back pain. Tr. 52, 56-57, 102, 107.

---

[1] The Court notes that, although the two-step process remains operative, pursuant to SSR 16-3p, the ALJ is no longer tasked with making an overarching credibility determination, and instead assesses whether the claimant's subjective symptom statements are consistent with the record as a whole. See SSR 16-3p, 2016 WL 1119029 (Mar. 16, 2016) (superseding SSR 96-7p). The ALJ's decision was issued before SSR 16-3p became effective and there is no binding precedent interpreting this new ruling or whether it applies retroactively. Compare Ashlock v. Colvin, 2016 WL 3438490, *5 n.1 (W.D. Wash. June 22, 2016) (declining to apply SSR 16-3p to an ALJ decision issued prior to the effective date), with Lockwood v. Colvin, 2016 WL 2622325, *3 n.1 (N.D. Ill. May 9, 2016) (applying SSR 16-3p retroactively to a 2013 ALJ decision). Because the ALJ's findings in regard to this issue pass muster irrespective of which standard governs, the Court need not resolve this issue.

[2] Although the prior February 2012 ALJ decision is not under review, the ALJ of the instant case incorporated by reference Plaintiff's testimony from the first ALJ hearing. Accordingly, the Court too has reviewed, and incorporates, Plaintiff's testimony at both hearings in rendering this Opinion. See Pl.'s Br. 3-5; tr. 42-126.

The ALJ found Plaintiff's physical symptom allegations were not fully credible. Tr. 21. Plaintiff does not contest the ALJ's findings regarding her physical symptom allegations, including allegations of back pain, right hip pain, and obesity. Tr. 21. Accordingly, the ALJ's findings that Plaintiff has no 10-pound lifting restriction, and is not functionally limited by any back injury, hip pain, or her obesity, is upheld. Id.; see Pl.'s Br. 25.

Regarding mental limitations, the ALJ found Plaintiff's "debilitating" symptom allegations were not consistent with her ADLs, good response to medications, and improvement over time. Tr. 21. Specifically, the ALJ noted Plaintiff was able to care for her mother and son, both of whom were reported to have schizophrenia, which "was in essence a 'fulltime job.'" Tr. 25. Indeed, Plaintiff testified that she drove her mother to doctor appointments, drove her son to medical appointments and school. Tr. 61, 369-70. In written testimony, Plaintiff indicated she helps her son organize his pills, prepare meals, and wash his clothes. Tr. 370. She also indicated she cares for family pets. Id. Plaintiff further indicated that she grocery shops, enjoys scrap-booking, talking to friends online and by telephone, and belonged to a social club known as the "Sassy Hatters" or "Red Hatters." Tr. 373. Plaintiff reported forming new friendships in 2012, and was attending church with her fiancé. Tr. 24-25, 27. Although Plaintiff also testified that she has "given up on" yardwork, and does not always feel able to cook, the ALJ's finding that Plaintiff's psychiatric symptoms from anxiety, depression, PTSD, and ADHD were not as limiting as alleged is rational and based on substantial evidence; therefore, the Court declines to disturb it. See tr. 371-72; Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).

The ALJ further noted Plaintiff responded well to her medications, diminishing the veracity of her allegations of mental disability. Tr. 22. The Ninth Circuit has held that effective treatment is a clear and convincing reason to impugn allegations of disabling symptoms. 20

C.F.R. § 416.929(c)(3); <u>Tommasetti v. Astrue</u>, 533 F.3d 1035, 1040 (9th Cir. 2008). For instance, Plaintiff noted in July 2010 that Effexor helped her focus and concentration, and had facilitated some improvement with her anxiety by October 2010. Tr. 27, 563, 789. In 2012, it was noted that Strattera was helpful for Plaintiff's focus and organization. Tr. 960, 962. The record also includes evidence that Clonazepam was effective in managing anxiety in 2010, and later after the dosage was increased in 2012. Tr. 27, 783, 784, 972. Further, the record supports the ALJ's finding that therapy was helpful in managing Plaintiff's symptoms by providing tools such as deep breathing techniques to remain calm, and in 2009, Plaintiff's therapist noted greatly improved relational and communication skills through counseling. Tr. 27, 477. During the 2012 hearing, Plaintiff testified that her various medications were helpful in managing her anxiety. Tr. 55-56.

Plaintiff argues that even though medication and therapy have been helpful at times, the record as a whole depicts a pattern of waxing and waning of mental health symptoms, arguing, "improvement would be followed by decline every time." Pl.'s Br. 23. In the context of questioning whether Plaintiff's symptom allegations are credible, however, the ALJ did not err in identifying numerous records wherein Plaintiff's allegedly debilitating anxiety and other mental impairments were shown to improve with various forms of treatment. <u>Supra</u>. The ALJ observed that her symptoms were triggered by external life events such as becoming homeless when she was removed from her mother's house by her brother, and by verbal and emotional abuse by her disabled son. Tr. 25, 552, 867, 1019. Accordingly, the ALJ found evidentiary support that Plaintiff's impairments are not disabling, "minus the stress of fulltime caregiving responsibilities." Tr. 26.

Although Plaintiff and her providers reported many instances of improvement with medicine and therapy, symptoms related to anxiety and depression recur throughout the record. Nonetheless, Plaintiff testified that despite her medications, she remains so unfocused she cannot "remember" how to make her bed, which appears completely at odds with her attested ability to care for herself, her son, and her mother. Tr. 102. Further, Plaintiff's alleged inability to function, concentrate, or follow directions is belied by her own testimony that she is able to make new friends, manage the needs of her son and mother, and follow through with treatment. Accordingly, based on a thorough review of the record as a whole, the Court is satisfied that the ALJ's interpretation – finding of evidence of improvement with treatment – is specific, rational, and supported by substantial evidence. Although the record is somewhat equivocal about whether treatment has engendered improvement such that Plaintiff could maintain competitive, full-time employment, the ALJ's reasonable interpretation regarding the veracity of Plaintiff's symptom allegations must be sustained. Burch, 400 F.3d at 679. Plaintiff has not identified reversible error.

## II. Lay Witness Testimony

Plaintiff contends the ALJ did not provide legally sufficient reasons to disregard the lay testimony provided by her case manager, Susan McRae, who appeared at the administrative hearing. Lay testimony regarding a claimant's symptoms or how an impairment affects claimant's ability to work is competent evidence that an ALJ must take into account. Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996) (citations omitted). The ALJ must provide "reasons germane to each witness" in order to reject such testimony. Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001) (citations omitted).

The ALJ summarized Ms. McRae's testimony and provided several reasons for according it limited weight. Tr. 28. Although Ms. McRae felt Plaintiff likely has a learning disability, the ALJ noted Ms. McRae's professional and educational background does not include a college diploma, and further, she did not administer any objective testing. Id. Additionally, although Ms. McRae described Plaintiff as isolated and without social contacts, the ALJ noted substantial evidence of record showing Plaintiff has made new friends, been attending church, and was recently engaged. Id. The ALJ further noted that Ms. McRae appeared to be focused on a discrete period of Plaintiff's life when she was homeless, but that overall, Plaintiff's health had improved, and she had procured housing. Id. For example, Ms. McRae initially testified that when Plaintiff's anxiety "clouds her judgment," she gets herself into dangerous situations, such as homelessness and living in her car. Tr. 114. However, upon examination by the ALJ, Ms. McRae acknowledged that it was not Plaintiff's behavior or actions that resulted in her homelessness, but rather a family member throwing her out of the house. Tr. 28, 115.

Plaintiff proffers an alternative interpretation, describing Ms. McRae as knowledgeable about Plaintiff's limitations due to her mental impairments, including difficulty understanding and following directions, and reliance upon others for support. Pl.'s Br. 28-29. However, despite Plaintiff's arguments, the Court is constrained to review the ALJ's decision regarding lay witness testimony for reasons germane to the witness, not to reweigh the evidence. Here, the ALJ provided more than one valid, germane reason to accord diminished weight to the lay witness' testimony. As such, the ALJ did not err.

III. Medical Opinion Evidence

Plaintiff argues the ALJ failed to properly credit medical opinion evidence of several physicians of record. The ALJ is responsible for resolving conflicts in the medical record,

including conflicting physicians' opinions. Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1164 (9th Cir. 2008). The Ninth Circuit distinguishes between the opinions of three types of physicians: treating physicians, examining physicians, and non-examining physicians. The opinions of treating physicians are generally accorded greater weight than the opinions of non-treating physicians. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). A treating physician's opinion that is not contradicted by the opinion of another physician can be rejected only for "clear and convincing" reasons. Baxter v. Sullivan, 923 F.2d 1391, 1396 (9th Cir. 1991). If, however, a treating physician's opinion is contradicted by the opinion of another physician, the ALJ must provide "specific, legitimate reasons" for discrediting the treating physician's opinion. Murray v. Heckler, 722 F.2d 499, 502 (9th Cir. 1983). Specific, legitimate reasons for rejecting a physician's opinion may include its reliance on a claimant's discredited subjective complaints, inconsistency with the medical records, inconsistency with a claimant's testimony, or inconsistency with a claimant's activities of daily living ("ADLs"). Tommasetti, 533 F.3d at 1040.

A. Janice C. Veenhutzen, M.D.

Plaintiff contends the ALJ failed to properly evaluate the medical opinion of Dr. Veenhutzen, who co-signed some of the chart notes of Plaintiff's therapist, Cary Zeeb, M.A., L.P.C. As a threshold matter, Plaintiff argues the Commissioner waived a response because Dr. Veenhutzen's name was not explicitly referenced in the "Statement of Issues" portion of her brief. See Pl.'s Reply 1-2. While the Commissioner did mention Dr. Veenhutzen in a fairly lengthy footnote, Plaintiff maintains the Commissioner "has waived the opportunity to raise a legitimate response to these issues and arguments by addressing the issues only in a footnote and by omitting the issue in the summary of issue in her brief." Pl.'s Reply 2.

In support, Plaintiff directs the Court to <u>Hilao v. Estate of Marcos</u>, 103 F.3d 767 (9th Cir. 1996). However, <u>Hilao</u> does not stand for the proposition that responding to an issue in a footnote waives the response. The <u>Hilao</u> court explained that "summary mention of an issue in a footnote, without reasoning in support of the appellant's argument, is insufficient to raise the issue on appeal." <u>Id.</u> at 778 n.4. In contrast to the situation in <u>Hilao</u>, the Commissioner's footnote contains ample reasoning in support of the argument that Dr. Veenhutzen's co-signatures do not transform chart notes written by non-acceptable medical sources into acceptable medical source documents. <u>See</u> Def.'s Br. 9-10 n.2. In addition, the appellant in <u>Hilao</u>, the estate of former Philippine president Ferdinand Marcos, attempted to raise an issue on appeal that was not raised in the original action. <u>Hilao</u>, 103 F.3d at 771. The posture of the instant case is such that Plaintiff is essentially the appellant, and therefore could waive any issue not broached in her opening brief. <u>Hilao</u> does not address any such restriction regarding the "appellee," here, the Commissioner. Thus, not only is <u>Hilao</u> inapposite, but the Commissioner directly responded to the issue raised by Plaintiff.

Therefore, although the Commissioner's discussion of Dr. Veenhuzen's co-signatures is relegated to a footnote, it squarely addresses the issues raised by Plaintiff, and includes citations to the administrative record as well as relevant cases and statutes. <u>See, e.g.</u>, <u>Acosta-Huerta v. Estelle</u>, 7 F.3d 139, 144 (9th Cir. 1992) ("The federal rules require the brief to contain the contentions of the appellant with respect to the issues presented, and the reasons therefore, with citations to authorities, statutes, and parts of the record relied on . . . Issues raised in a brief which are not supported by argument are deemed abandoned . . . .") (internal citations and quotation marks omitted). As such, the Commissioner has not waived the opportunity to respond.

Turning to the substantive argument, Plaintiff contends that Dr. Veenhutzen's co-signed chart notes and/or medical opinions constitute an "acceptable medical opinion evidence" under 20 C.F.R. § 404.1513(a), as explained by Social Security Ruling ("SSR") 06-03p, 2006 WL 2329939 (Aug. 9, 2006). Plaintiff argues the mental health providers at Valley Medical Health "work[] together to provide clients with treatment suited to their individual needs." Pl.'s Reply 2. Plaintiff further asserts that the Valley Mental Health "team" is more than "separate medical providers on their own that occasionally read each other's reports." Pl.'s Reply 3.

However, aside from the clinic's website marketing jargon, it is unclear whether the staff of Valley Medical Health actually works as a team in the manner contemplated by Social Security case law. As the Commissioner notes, a doctor's co-signature on a medical document no longer necessarily transforms a non-acceptable medical source opinion, or, for that matter, the opinion of an "interdisciplinary team," into an acceptable source opinion. See 65 Fed.Reg. 34950, *34952 (June 1, 2000). Rather, at best, the applicable standard is whether the non-acceptable source is "working closely with, and under the supervision of" an acceptable medical source. Taylor v. Comm'r of Soc. Sec. Admin., 659 F.3d 1228, 1234 (9th Cir. 2011) (citing Gomez v. Chater, 74 F.3d 967, 971 (9th Cir. 1996)). However, because the regulation relied upon by Gomez has been repealed, the precedential value of both Gomez and Taylor (which relied upon Gomez) has been called into doubt. See Molina v. Astrue, 674 F.3d 1104, 1111 n.3 (9th Cir. 2012).

On this record, Dr. Veenhutzen co-signed three medical documents: an October 6, 2009 "Mental Health Review" which was also signed by Ms. Zeeb (tr. 476-78); a May 11, 2010 "Psychosocial Assessment – Annual Update" (tr. 552-60); and a May 27, 2011 "Adult Biopsychosocial Assessment/Annual Update" (tr. 810-813). Aside from Dr. Veenhutzen's co-

signature, there is no evidence that the doctor was supervising Ms. Zeeb, or otherwise working closely with her in treating Plaintiff. Similarly, there is no evidence Dr. Veenhutzen ever examined or treated Plaintiff herself. Thus, the record does not support Plaintiff's contention that Dr. Veenhutzen was a treating medical provider; therefore, Plaintiff's further contention that "an ALJ cannot in its decision totally ignore a treating doctor and his or her notes, without even mentioning them," is inapposite. Pl.'s Reply 3 (quoting Marsh v. Colvin, 792 F.3d 1170, 1172-73 (9th Cir. 2015)). Accordingly, insofar as the records co-signed by Dr. Veenhutzen are considered medical opinion evidence, they do not command any special weight by virtue of the doctor's co-signature. Further, to the extent Plaintiff argues the ALJ erred by failing to explicitly mention any of the medical opinions co-signed by Dr. Veenhutzen, the argument is factually inaccurate, as the ALJ noted that Ms. Zeeb's October 2009 opinion statement was co-signed by a medical doctor. Tr. 27; see Pl.'s Reply 3. The ALJ did not err in assessing Dr. Veenhutzen's contribution to the evidentiary record.

B. LPC Zeeb

As indicated above, Ms. Zeeb is a Licensed Professional Counselor who has been Plaintiff's therapist since 2009. As an LPC, she is considered a non-acceptable, "other medical source" under the Act. 20 C.F.R. §§ 404.1513(d), 416.913(d); SSR 06-03p, at *3. Accordingly, in order to disregard her written testimony, the ALJ is required to provide reasons germane to her. Molina, 674 F.3d at 1111 (citations omitted).

Ms. Zeeb provided several yearly mental health reviews of record, some of which were co-signed by Dr. Veenhutzen. Supra. The ALJ noted that Ms. Zeeb provided an opinion statement in October 2009, which he accorded little weight, finding alleged episodes of decompensation at work were based upon subjective reporting from Plaintiff, rather than Ms.

Zeeb's actual knowledge of Plaintiff's performance at work. Additionally, the ALJ found Ms. Zeeb never administered any objective testing, although she nevertheless concluded Plaintiff has extreme difficulty sustaining focus to complete work tasks. Tr. 27, 478. Both rationales the ALJ offered are specific, and germane to Ms. Zeeb. Indeed, the rationales the ALJ invoked in rejecting Ms. Zeeb's opinion would likely suffice under the more rigorous legal standards of specific-and-legitimate or clear-and-convincing. See Fair, 885 F.3d at 605 (ALJ may reject opinions based solely upon subjective reporting); Young v. Heckler, 803 F.3d 963, 968 (9th Cir. 1986) (ALJ may reject opinion that is brief and conclusory and/or unsupported by clinical findings). Moreover, both are supported by substantial evidence in the record. As such, the ALJ did not err in according Ms. Zeeb's October 2009 opinion little weight.

Plaintiff assigns error to the ALJ's failure to evaluate Ms. Zeeb's annual assessments of May 14, 2009; May 11, 2010; May 27, 2011; and March 25, 2013. Pl.'s Br. 19-20. The Commissioner responds that the ALJ is not required to discuss every piece of evidence, but rather explain why "significant probative evidence has been rejected." Def.'s Br. 13 (citing Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1012 (9th Cir. 2003); Vincent ex rel. Vincent v. Heckler, 739 F.2d 1393, 1394-95 (9th Cir. 1984)). Because the records at issue did not prescribe specific functional limitations, argues the Commissioner, the ALJ was not required to mention them. Id.

In the May 2009 assessment, Ms. Zeeb noted Plaintiff's problems were multifaceted, and her symptoms included anxiety, fatigue, inability to sustain work, health issues, possible housing crisis . . , poor support system, and poor assertiveness and boundaries. Tr. 692, 697. Although Plaintiff assigns error to the ALJ's failure to address the May 2009 assessment, she does not identify any functional limitations presented therein beyond those prescribed in the RFC, or other

OPINION & ORDER - 16

probative content. <u>See</u> Pl.'s Br. 19; Pl.'s Reply 9. Accordingly, the Court does not have a basis to assign error.

In the May 10, 2010 assessment, Ms. Zeeb noted that Plaintiff's family dynamics had improved, and that she was making "great progress on lifelong issues." Tr. 555, 559. Plaintiff argues the assessment identifies mental health symptoms and "limitations inconsistent with the ability to sustain work." Pl.'s Br. 19. While the assessment notes ongoing anxiety and depression, health issues, and a poor support system coupled with poor assertiveness skills and boundaries, it does not define any specific functional limitation. <u>See</u> tr. 557-60. As such, the assessment does not represent evidence probative of her functional capacity, and therefore, the ALJ was not required to specifically discuss the assessment. <u>Valentine v. Comm'r Soc. Sec. Admin.</u>, 574 F.3d 685, 691-92 (ALJ not required to incorporate medical opinion that does not define a claimant's functional capacity).

The assessment produced by Ms. Zeeb on May 27, 2011 noted that Plaintiff continued to have severe anxiety due to dealing with her son, but her depression had improved, as had her interpersonal relationships and boundary setting. Tr. 810. The assessment further observed apparent cognitive deficits and inability to retain employment due to anxiety, including "flashbacks, panic attacks, and dissociative experiences following trauma triggers which greatly affects her ability to function." Tr. 813. Plaintiff argues, and the Court agrees, that frequent flashbacks and/or panic attacks and dissociative experiences are indeed functional limitations. However, even assuming Plaintiff is limited by those symptoms, she has not explained why the RFC is deficient, as it includes provisions limiting Plaintiff to simple and routine tasks, and avoidance of public contact aside from "brief, normal interactions with coworkers and supervisors." Tr. 20; <u>see</u> <u>Valentine</u>, 574 F.3d at 691-92. Moreover, as noted, the record does not

contain any objective evidence of Plaintiff's alleged dissociative experiences or limitations due to panic attacks and/or flashbacks. Thus, the rationales the ALJ validly invoked in according Ms. Zeeb's October 2009 assessment are equally applicable to the May 2011 assessment. As such, Plaintiff cannot show that discussion of the May 2011 assessment would likely change the outcome of this case. Any error in failing to discuss the May 2011 assessment is harmless.

Ms. Zeeb's March 2013 assessment notes that Plaintiff "often has flashbacks, panic attacks, and dissociative experiences following conflict or verbal aggression with others." Tr. 1019. However, while these symptoms indicate a level of impairment due to anxiety, the assessment once again lacks specifics regarding Plaintiff's functional capacity. Although Plaintiff argues the assessment confirms she has trouble with inattention, concentration, and reacting to trauma triggers, the evidence does not necessarily support specific limitations beyond those set forth in the RFC. Thus, the Court's reasoning in declining to find error with regard to the May 2011 assessment is equally applicable to the March 2013 assessment. Supra; Valentine, 574 F.3d at 691-92.

In sum, the ALJ did not harmfully err in evaluating the records attributed to treatment by Ms. Zeeb.

C. PMHNP Eriksson

The record reflects that, in contrast to Dr. Veenhutzen, Psychiatric-mental health nurse practitioner ("PMHNP") Amber Eriksson directly examined and treated Plaintiff on several occasions, and produced two opinion statements. Like Ms. Zeeb, Ms. Eriksson is considered a non-acceptable, "other" medical source under the Act, which requires that the ALJ provide reasons germane to her in order to reject her opinions. The ALJ addressed both of Ms. Eriksson's opinions of record separately in his decision. Tr. 26-27. Plaintiff contends the ALJ failed to

properly evaluate Ms. Eriksson's opinions by mischaracterizing the extent of Plaintiff's improvement with treatment, and erroneously finding her opinions inconsistent with her own medical records. Pl.'s Br. 21-24.

The ALJ first summarized Ms. Eriksson's April 2010 opinion, noting her belief Plaintiff would require excessive breaks in a normal workday due to fatigue or drowsiness from medications, and stress and anxiety from social interactions. Tr. 26-27, 512. Ms. Eriksson rated Plaintiff "poor" in numerous areas of social functioning, and concluded Plaintiff has marked limitation in overall social functioning, marked limitation in concentration, persistence, and pace, and would be expected to have four or more episodes, two or more weeks in duration, of decompensation each year. Tr. 514.

The ALJ accorded the April 2010 opinion little weight. He noted that Ms. Eriksson's assertion that Plaintiff would require excessive breaks due to fatigue from medication was inconsistent with the record, as Plaintiff repeatedly reported having no such side effects. Tr. 27. Indeed, only one month after Ms. Eriksson's opinion was rendered, Ms. Eriksson noted Plaintiff was sleeping well with no reported side effects. Tr. 565. Three months thereafter, Ms. Eriksson again noted Plaintiff was tolerating her medications well and made no changes to her prescriptions. Tr. 783. The ALJ's finding is further supported by numerous other chart notes indicating Plaintiff had no side effects from medication. Tr. 786, 802, 805, 807, 826, 828, 833, 970, 972, 998, 1006, 1012 As such, the ALJ's reason for disregarding Ms. Eriksson's opinion regarding a need for excessive breaks due to medication side effects is well-supported in the record, and therefore the Court may not reverse. Batson, 359 F.3d at 1197.

The ALJ further found Ms. Eriksson's opinion regarding Plaintiff's social functioning inconsistent with her chart notes. For example, although Ms. Eriksson reported marked

limitations in social functioning, her May 2010 yearly update noted improvement in interpersonal relationships over time, with therapy and medication. Tr. 27, 559-60. In July 2010, Plaintiff reported "greatly improved" ability to focus and concentrate after Ms. Eriksson increased her Effexor dosage, supporting the ALJ's finding that even assuming Plaintiff had "marked" limitations in concentration, persistence, and pace in April 2010, those symptoms had greatly improved by July 2010. Tr. 27, 563. Although Plaintiff replies that the ALJ merely "cherry-picked" evidence, the ALJ successfully illustrated the contradictions between the conclusions set forth in the April 2010 opinion and her contemporaneous chart notes. As the Commissioner maintains, the ALJ's finding is further supported by numerous examples of Ms. Eriksson observing stable or upbeat mood, improved social functioning, and decreased anxiety. Tr. 565, 567, 783, 786, 789, 805, 823, 826, 833, 960, 962, 966, 972, 974, 977. These are specific reasons, germane to Ms. Eriksson, to accord her opinion diminished weight. See, e.g. Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005) (contradictions between doctor's opinion and doctor's own chart notes is a clear and convincing reason to reject the opinion).

The ALJ separately evaluated Ms. Eriksson's June 2013 medical source statement. Tr. 27, 955. Ms. Eriksson indicated that Plaintiff's conditions had persisted at the level of severity described in the previous April 2010 opinion. Tr. 955. She explained that Plaintiff's symptoms "escalated during times of high stress," and that her PTSD and panic symptoms "continue to interfere with every aspect of her life, making simple activities highly difficult," noting issues using public transit, going to the store, and interacting with others. Id. Plaintiff contends that the ALJ's finding of improvement with therapy and medication is not based on substantial evidence because Ms. Eriksson opined that "any type of stressor can escalate her anxiety beyond a normal level." Pl.'s Reply 12; tr. 1017.

OPINION & ORDER - 20

The ALJ accorded Ms. Eriksson's 2013 opinion only "limited weight," and noted that contrary to Ms. Eriksson's opinion, 2013 chart notes show Plaintiff frequently reported that her medications and calming techniques learned in therapy were helpful in treating her anxiety, and accordingly, Ms. Eriksson consistently reported improvement. Tr. 27, 998, 1003, 1005, 1010, 1017. As the ALJ pointed out, the record further reflects that although Plaintiff experienced increased anxiety related to relationship issues with her fiancé, the situation reportedly improved when Plaintiff used skills learned in therapy to be more assertive. Tr. 991-92, 998, 1010, 1013, 1017.

Additionally, although Ms. Eriksson indicated Plaintiff's anxiety makes it difficult for her to use public transit, she reported on June 11, 2013 to Scott T. Hadden, M.D. that she had been "taking the bus downtown and has enjoyed exploring." Tr. 25, 27, 951. Dr. Hadden further indicated Plaintiff denied fatigue and depression, although she did endorse anxiety. Tr. 952. Thus, although the record reflects persisting anxiety symptoms, the ALJ sufficiently provided examples of inconsistencies between Ms. Eriksson's chart notes and her written opinion, and the contemporaneous record which undercuts her opinion as to symptom severity. The rationales provided by the ALJ were at least germane to Ms. Eriksson; Plaintiff's assertion that the operative legal standard is specific-and-legitimate or clear-and-convincing is unavailing. See Pl.'s Reply 13-14. Moreover, to the extent Plaintiff argues the ALJ included only evidence that "looks at mental illness only in the stages when [Plaintiff] [wa]s improving," Ms. Eriksson repeatedly reported improvement throughout treatment, up to and including the chronologically final chart note on this record, signed in August 2013. See tr. 1017. As such, even if other rational interpretations of the record are possible, the ALJ's rationale interpretation must be sustained. *Batson*, 359 F.3d at 1193.

OPINION & ORDER - 21

D. Dr. Stradinger

Plaintiff assigns error to the ALJ's decision to accord "partial weight" to the January 2010 opinion of Kay Stradinger, Psy.D., who performed a one-time examination. The ALJ summarized the doctor's findings, and stated that although newer records reflect improvement in Plaintiff's mental health, the RFC includes "specific cognitive and social limitations generally consistent with Dr. Stradinger's assessment." Tr. 22. However, Plaintiff argues the ALJ failed to capture the severity of her limitations, highlighting Dr. Stradinger's opinion that Plaintiff "is capable of completing simple and repetitive work type tasks . . , would have a difficult time working independently, effectively, appropriately, and on a sustained basis with supervisors, coworkers, and the public given her anxiety and personality traits . . . would have a difficult time handling the usual stresses in the workplace given her anxiety and her concentration and learning struggles . . . [and] would probably need one-on-one training and positive reinforcement to be confident and successful on a job." Pl.'s Br. 26-27; Pl.'s Reply 11; tr. 487.

By comparison, the RFC allowed "simple, routine tasks . . .[Plaintiff] should avoid public contact, but can engage in routine, brief, normal interactions with coworkers and supervisors." Tr. 20. Thus, the ALJ reasonably accounted for Dr. Stradinger's limitations regarding simple and repetitive work, and workplace interactions with coworkers, supervisors, and the public. See Turner v. Comm'r of Soc. Sec. Admin., 613 F.3d 1217, 1224 (9th Cir. 2010) (ALJ did not err to formulate RFC consistent with, though not identical to, medical opinion limitations). Regarding Dr. Stradinger's limitations as to "probably" needing one-on-one training, "might" do better with "more" support and supervision, and "might" have a difficult time learning new jobs and routines, the ALJ is not required to incorporate mere recommendations into the RFC. Valentine, 574 F.3d at 691-92.

Plaintiff also argues the RFC failed to account for Dr. Stradinger's limitations regarding persistence, concentration, and pace. Pl.'s Reply 11. However, when a doctor recognizes deficiencies in concentration, persistence, or pace and translates those deficiencies into a limitation to simple and repetitive work, an ALJ adequately accounts for the deficiencies by adopting the "simple and repetitive work" limitation. See Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1174 (9th Cir. 2008); Glosenger v. Comm'r of Soc. Sec. Admin., No. 3:12-cv-1774-ST, available at 2014 WL 1513995, at *6 (D.Or. Apr. 16, 2014). Thus, the ALJ did not err by omitting limitations in concentration, persistence, or pace from the RFC. Further, to the extent Plaintiff argues the ALJ erroneously discredited the opinion of state agency non-examining physician Bill Hennings, Ph.D. because Dr. Hennings "afforded full weight" to Dr. Stradinger's opinions, Dr. Hennings also translated Plaintiff's moderate deficiencies in concentration, persistence, or pace into an RFC that allowed simple and routine tasks. See tr. 26, 498, 500. Accordingly, Plaintiff's argument regarding Dr. Henning's opinion fails for the same reason as that regarding Dr. Stradinger's. Stubbs-Danielson, 539 F.3d at 1174.

In sum, the ALJ evaluation of the medical opinion evidence is based on substantial evidence in the record, and free of harmful legal error.

IV. Development of Administrative Record

Plaintiff contends the ALJ erred by failing to further develop the record based on her alleged cognitive impairment. Specifically, Plaintiff alleges Dr. Stradinger diagnosed "Rule Out Learning Disorder," and Ms. Zeeb and Dr. Veenhutzen "diagnosed borderline intellectual functioning." Pl.'s Br. 30. However, the record does not reflect Plaintiff was diagnosed with borderline intellectual functioning; rather, the relevant diagnosis was "R/O [rule-out] Borderline Intellectual Functioning." Tr. 558. A "rule-out" diagnosis does not constitute an actual diagnosis

in either case, and further, rule-out diagnoses related to impaired intellectual functioning do not necessarily trigger an ALJ's duty to further develop the record. See, e.g., Byes v. Astrue, 687 F.3d 913, 916 (8th Cir. 2012); Simpson v. Comm'r, Soc. Sec. Admin., Civ.No. 99-1816-JO, 2001 WL 213762, at *7-8 (D.Or. Feb. 8, 2001); Garrett v. Colvin, No. 6:15-cv-00949-BR, 2016 WL 3382134, at *8 (D.Or. June 14, 2016). Accordingly, neither rule-out diagnosis for borderline intellectual functioning or learning disorder constitutes an actual diagnosis.

Plaintiff also contends that the ALJ was compelled to arrange IQ testing for her based on evidence that she had "problems at school at an early age" and "later problems with her ability to comprehend." In support, Plaintiff cites Garcia v. Comm'r of Soc. Sec., 768 F.3d 925 (9th Cir. 2014) for the proposition that "an IQ test be ordered that would produce the Full Scale, Verbal, and Performance Level IQs in order to fully evaluate [Plaintiff's] cognitive limitations." Pl.'s Br. 31. Garcia, however, is distinguishable because there, the record established a diagnosis of borderline intellectual functioning which the ALJ found severe at step two. Id. at 929. The ALJ in Garcia found the plaintiff did not meet a Listing based on her score on one of three potentially qualifying IQ tests; the remaining two tests were not administered because of time constraints. Id. at 928-29. The Ninth Circuit determined that given Garcia's undisputed borderline intellectual functioning diagnosis and incomplete IQ tests, the ALJ was obliged to remand in order for the IQ testing to be completed. Id. at 929.

In the instant case, by contrast, Plaintiff has not presented evidence establishing a valid diagnosis of any type of cognitive impairment, nor is there evidence of ambiguous results in cognitive testing. Moreover, Plaintiff did not allege disability (or that she meets Listing 12.05C) due to borderline intellectual functioning or learning disorder in her Social Security applications, in either of her two administrative hearings, nor in her submissions to the Appeals Council. Tr.

350, 445-56, 468-75. Thus, <u>Garcia</u> is inapposite. The ALJ's obligation to develop the record was not triggered. <u>See</u> <u>Meanel v. Apfel</u>, 172 F.3d 1111, 1115 (9th Cir. 1999) (claimants must raise issues at their administrative hearings in order to preserve them on appeal); <u>see also</u> <u>Jamtass v. Colvin</u>, 606 Fed.Appx. 363 (9th Cir. 2015).

<u>**Conclusion**</u>

For the reasons discussed above, the Commissioner's ultimate decision was based on substantial evidence and free of harmful legal error. Accordingly, the Commissioner's decision is AFFIRMED and this case DISMISSED.

DATED this <u>15th</u> day of September, 2016.


       /s/ John Jelderks_____

John Jelderks

U.S. Magistrate Judge